**Lori WILSON, Plaintiff,**

v.

**Reuben O'D. ASKEW, Governor of the State of Florida, et al., Defendants.**

**Civ. No. 72–218–Orl.**

United States District Court,
M. D. Florida,
Orlando Division.

Nunc Pro Tunc, Sept. 1, 1972.

Dwight W. Severs, Crofton, Holland & Starling, Titusville, Fla., for plaintiff.

Robert L. Shevin, Atty. Gen., State of Florida, Tallahassee, Fla., for defendants.

### OPINION

Before, RONEY, Circuit Judge, and TJOFLAT and HODGES, District Judges.

PER CURIAM:

The Florida Election Code, Florida Statutes § 99.061(1), F.S.A., requires candidates seeking election to the state

legislature as the nominee of a recognized political party to qualify for the election at least forty-nine days prior to the date of the first primary held to determine the party nominees.[1] In this general election year, the first primary is scheduled for September 12th. Thus, under the Code, persons seeking party nominations must have qualified by July 25th. The controversy in this case centers on the election for State Senate Seat No. 16 in Brevard, Seminole, Orange and Osceola Counties.

One Republican and one Democrat have qualified for that office and are running unopposed. Their names will appear automatically on the general election ballot in November. Plaintiff, Lori Wilson, seeks election to that senate seat as an independent candidate. The Code provides that an independent candidate may be assigned a position on the general election ballot by submitting to the Supervisor of Elections in each county of the election district a petition bearing the signatures of 3% of the registered voters of that district.[2]

On August 7, 1972, the plaintiff submitted her petition, bearing legally sufficient signatures, to the appropriate supervisors of elections. The supervisors have until September 12th to certify the petition to the Secretary of State. If satisfied that the statutory requirements have been met, the Secretary *must notify the plaintiff who then has five days to qualify as a candidate.[3]* If the supervisors utilize the full statutory period before certifying her petition to the Secretary, the plaintiff will not be entitled to qualify as an independent candidate until after the 12th of September.

Meanwhile, plaintiff's Democratic and Republican opponents are campaigning for the general election and have been

---

1. *Florida Statute 99.061(1).*

 Candidates for nomination of any recognized political party for state offices of . . . state senator, member of the house of representatives . . . are required to file their qualification papers and pay the qualification fees and party assessment, if any has been levied, to the department of state at any time after noon of the first filing date, which shall be the sixty-third day prior to the first primary, but not later than noon of the forty-ninth day prior to the date of the first primary in the year in which any primary is held.

2. *Florida Statute 99.153.* Independent candidates for other offices.

 Any registered elector seeking the office of state senator, member of the house of representatives . . . in a partisan *election preceded by party* primaries may have his name as an independent candidate printed on the general election ballot, if he is otherwise qualified to hold the office that he seeks and if a petition requesting that he be assigned a position on the general election ballot is signed by three percent of the registered electors of the county or district which is represented by the office sought. The petition or petitions shall be submitted to the supervisor of elections of the county or counties, if there is more than one county in the representative district, no later than thirty-

five days prior to the first primary preceding the general election, and the supervisor shall check the names and shall, on or before the day of the first primary, certify the number shown as registered electors of the county. . . . The supervisor shall then forward the petition, with a certificate attached, to the department of state which shall determine whether or not the percentage factor as required herein has been met. If the percentage factor has been met, the department of state shall notify the candidate that he has secured a position on the ballot for the general election. The candidate shall, within five days of being so notified by the department of state, qualify with the department of state, pay his filing fee, and take and subscribe to the oath provided in § 99.021. The qualification of each candidate to be on the general election ballot shall become official upon his filing with the department of state if the candidate is otherwise qualified to hold the office which he is seeking.

3. The statute sets no time limit within which the secretary of state must act to notify the prospective candidate. The Florida courts have construed such language, however, to give no discretion to the secretary and require him to act with due diligence. Davis ex rel. Taylor v. Crawford, 95 Fla. 438, 116 So. 41 (1928).

doing so since July 25th. They are advertising their candidacies through the traditional media, the use of billboards, campaign literature, and handouts. Plaintiff contends that she is precluded from doing this, however, because she has not yet qualified as a "candidate." The Code provides that a person, prior to becoming a candidate, may not "spend money and make any expenditure" for advertising.[4]

The gist of plaintiff's complaint is that the Florida Election Code invidiously discriminates against an independent candidate by giving party candidates, as in this case, a 49-day head start in their campaigns. Thus, plaintiff complains that this statutory scheme gives unconstitutionally unequal treatment to independent candidates, particularly, as is the case here, when the party candidates are running unopposed in the primary. Those candidates are campaigning not for their party's nomination, but for the general election, while the plaintiff is forced to wait until she attains the status of a "candidate."[5] Plaintiff argues, then, that four sections of the Election Code are unconstitutional: Florida Statutes §§ 97.021(18), 99.061(1), 99.161(2)(e), and 99.153, F.S.A. The plaintiff does not contend that any one of these sections is invalid on its face, but that the combined operation of the sections which requires the plaintiff to refrain from any campaigning amounts to an unconstitutional statutory scheme. Plaintiff would be satisfied, as brought out in argument, with any determination short of declaring all the sections invalid if she could just be permitted to campaign on an equal basis with the party candidates.[6]

The State concedes that, under the plaintiff's construction of the Code, she is at a serious disadvantage in her campaign and may well be denied equal protection. It suggests, however, that her remedy should be fashioned by the Florida courts and that we should abstain to permit them to do so.

 Although vested with jurisdiction in a given case, a federal court may decline its exercise when the constitutional issue might be averted or settled by resort to the state forum. Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Abstention is indicated where, as here, alternative dispositions are available to the state court which would obviate a federal constitutional adjudication of the legislation under attack. As a matter of comity, it is desirable for the state tribunal to have the first opportunity to interpret a state statute. This is particularly true where a uni-

---

4. *Florida Statute 99.161(2)(e).*

No person, committee, political party, organization, or person acting on behalf of another, shall, prior to his becoming a candidate, directly or indirectly spend money and make any expenditure for the following purposes promoting his candidacy:
1. Advertising on radio or television.
2. Advertising in newspapers, magazines or periodicals.
3. Advertising on billboards, banners or streamers.
4. Advertising on campaign literature or any other printing.
5. Renting of hall in which to address the public. Provided that such person, committee, political party, organization or person acting on his behalf shall be permitted to reserve but make no use of advertising time and space and office facilities prior to qualification.

5. *Florida Statute 97.021(18)* defines a "Candidate" as "any person who has filed his qualification papers, and paid his qualifying fees as required by law." Plaintiff's quandary, therefore, centers around her inability to become a "candidate" by filing and paying fees until after the supervisors of elections and the Secretary of State fulfill their duties under the statute.

6. Should the plaintiff choose to advertise her campaign prior to becoming a "candidate," Florida Statute § 104.27 provides for prosecution for a misdemeanor, voiding of her election, suspension or removal from office, and the revocation of any corporate charter or business license issued by the State.

form state regulatory scheme, such as an election code, is involved. Burford v. Sun Oil Co., 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). The more intricate the statutory pattern, the greater the chance of frustration by premature federal intervention. Jackson v. Ogilvie, 401 U.S. 904, 91 S.Ct. 642, 27 L.Ed.2d 803 (1971); Flook v. Nearing, No. 72–345 Civ–J (M.D.Fla. June 30, 1972).

■ The arguments in this case suggest several alternative dispositions available to the state courts [7] which would make abstention appropriate here. The state courts may decide that Section 99.153 is wholly inapplicable in this situation and that the plaintiff is free to campaign without further delay. The applicability of the statutory definition of a "candidate" may also be subject to varying construction, as well as the election supervisors' duties and the scope of their discretion in delaying certification of an independent candidate.

In addition to construing the Code so as to avoid any constitutional issue, the state court could, of course, agree with the plaintiff and declare the entire statutory scheme invalid. That court could also take a narrow constitutional approach and consider only the issue of the application of the Code to the plaintiff on the facts of this case. Any one of these decisions by the state court would remedy the plaintiff's complaint and render unnecessary the exercise of jurisdiction by a three-judge federal court. Moreover, the Florida courts should be permitted to interpret this election Code. It is extremely difficult to fashion a remedy which will avoid disrupting the entire regulatory scheme. The Florida courts, with their familiarity and expertise with the Code, are better suited to perform this task.

It is for these reasons that we abstain from the exercise of jurisdiction and dismiss the case.

7. Florida's Declaratory Judgments Act, Florida Statutes, Ch. 86, provides for re-lief in the state courts identical to that sought in this Court.